IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LOUIS MARSICO, )
) No. 13-990
Plaintiff, )

v.

CAROLYN W. COLVIN,

Defendant.

## OPINION AND ORDER

### SYNOPSIS

In this action, Plaintiff filed an application for disability benefits pursuant to Title II, based in part on mental health impairments. His claim was denied upon hearing, and the Appeals Council denied his request for review. This appeal followed. Present issues surround Plaintiff's diagnosis of bipolar II disorder. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied. This matter will be remanded for further proceedings.

### OPINION

#### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting

1

Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).

## II. THE PARTIES' MOTIONS

By way of background, prior to the alleged onset of disability, Plaintiff built and managed what counsel describes as a forty-million dollar construction company. Then, in 2002, his youngest son died due to a heroin overdose. In 2005, in conjunction with his psychiatrist, Plaintiff filed a claim under his company's disability policy, referred to herein as UNUM. The claim resulted in litigation, which eventually settled. Plaintiff then instituted the present matter, and claimed a disability onset of January 31, 2003, when Plaintiff was diagnosed with bipolar II disorder. In the interim, another of Plaintiff's son suffered serious traumatic brain injury following a motor vehicle accident, his wife suffered from debilitating depression, and his construction business went into bankruptcy.

### A. MEDICAL OPINION EVIDENCE

Initially, I deal with Plaintiff's objection to the manner in which the ALJ considered the medical evidence. In particular, Plaintiff takes issue with the ALJ's handling of evidence from his treating psychiatrist, who treated Plaintiff for approximately twelve years as of the hearing date, and evidence from non-treating medical sources.

It is well-settled that the report of a treating physician "should be accorded great weight," particularly if that physician's treatment records or opinion "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Our Court of Appeals has "consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician." Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986). If rejecting or discrediting competent evidence, the ALJ must explain his reasons for doing so. Martin v. Comm'r of Soc. Sec., No. 13-2150, 2013 U.S. App. LEXIS 24699 (3d Cir. Dec. 12, 2013).

The ALJ's discussion of evidence from Plaintiff's treating psychiatrist, Dr. Hoffman, is sparing at best. The ALJ referred to checkmark forms completed by Dr. Hoffman, apparently in connection with the UNUM litigation, and made very brief reference to her deposition testimony. In so doing, the ALJ first stated that a treating physician is entitled to controlling weight, but not statements of opinion on the ultimate issue of disability. The ALJ then observed that Dr. Hoffman, in a checkmark form, found that Plaintiff had "extreme" limitation of his ability to maintain attention and concentration, and that Plaintiff "does not have capacity to organize, concentrate on project at work for full day." He also observed that Dr. Hoffman "admitted" A state agency expert, Dr. Schnepp, found only moderate limitations. The ALJ gave "substantial weight" to Dr. Schnepp's assessment, and found that Dr. Hoffman's statement represented "at most a moderate limitation." From a series of statements in the record, the ALJ extracted Dr. Hoffman's comment "feels good – looks good" – but did not mention other comments, such as, "unable to maintain the intensity and duration of daily routine." In other words, aside from these brief references, the ALJ does not discuss Dr. Hoffman's notes, reports, or other opinions.

3

I am perplexed by this overarching omission. The record contains voluminous evidence of Plaintiff's treatment for bipolar II disorder and related issues between 2003 and 2010, as well as Dr. Hoffman's 2011 report responding to Dr. Schnepp's assessment. These records are replete with probative evidence. For example, the ALJ's opinion does not contain a single reference to Plaintiff's multiple medications, which included Wellbutrin, Prozac, Ambien, Buspar, and Lamictal, or the side effects thereof. This, despite the fact that counsel, at the hearing, argued: "[Plaintiff's] inability to work is not actually the result of his illness. It's a result of the treatment that he receives for his illness…." Dr. Hoffman proffered extensive opinions regarding the effects of Plaintiff's medications.

These exclusions from the ALJ's opinion are not insignificant. The opinion does not refer to the many GAF scores, assigned over time, or other test results that appear in the record. GAF scores – especially scores of 50, such as Plaintiff received at one point -- are medical evidence that must be addressed. Bonani v. Astrue, No. 10-329, 2010 U.S. Dist. LEXIS 137871, at **19-21 (W.D. Pa. Oct. 15, 2010). Defendant discusses Ms. Ganley, a licensed clinical social worker who also treated Plaintiff from 2003 to 2010, who appears nowhere in the ALJ's opinion. Information from an LCSW – an "other source," in SSR lexicon -- "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Forcinito v. Comm'r of Soc. Sec., No. 12-6940, 2014 U.S. Dist. LEXIS 8411, at *15 (D.N.J. Jan. 23, 2014). Thus, an adjudicator should explain the weight given to opinions from such "other sources." Id. at *16.

Dr. Hoffman's notes reflect numerous descriptions of Plaintiff's problems, to the effect that he is, for example, "depressed, extremely stressed… apathetic, amotivated, has entertained

4

thought of suicide…[He] has difficulty with energy, task completion, motivation." Her 2011 report stated as follows:

> I have no evidence from my interviews over the past 11+ years that Mr. Marsico can maintain any kind of a normal routine or schedule. He has reported that he frequently makes plans for himself, simple plans, and then lacks the motivation to carry out these plans. Hs day degenerates into having coffee at a coffee shop in the morning and often little else. He performs the most minimal tasks around his house and these with great difficulty. This speaks to the fundamental argument for Mr. Marsico not being able to work in any capacity. The issue for him…is that the medications that allow him to be psychologically stable rob him of motivation, drive, enthusiasm, and reliability.

The ALJ either failed to consider the entire record, or considered and rejected vast swaths of the record without explaining his reasons for doing so. While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning. Epps v. Colvin, No. 13-938, 2014 U.S. Dist. LEXIS 25732, at *4 (W.D. Pa. 2014). "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were proper." Cotter v. Harris, 642 F. 2d 700, 706-07 (3d Cir. 1981). Because I cannot adequately review the ALJ's decision to reject much of the record – or determine whether such a decision was in fact made – remand is required.

B. UNUM LITIGATION MATERIALS

Next, I address Plaintiff's objection to the ALJ's use of materials from the UNUM litigation.

I find no error in the mere fact that the ALJ relied on or considered materials from the UNUM litigation – materials that were, after all, proffered by Plaintiff and included in the record at the Plaintiff's behest. I am unsure, however, why the ALJ found "significant" Plaintiff's counsel's 2008 letter to UNUM. The letter stated that Plaintiff "does not claim to be totally

disabled at present, as that term is defined in the…policies." The ALJ separately noted that at issue in the UNUM litigation was Plaintiff's ability to perform the duties of his former occupation. Clearly, the ALJ was suggesting that the medical opinions offered in connection with the UNUM litigation were of limited relevance, due to distinctions between the litigation and the instant disability claim. Likewise, there is no demonstration that counsel's letter is relevant to the question of Plaintiff's disability within the meaning of Title II, as opposed to the UNUM policies. The letter neither contains a medical opinion, nor addresses how the policies at issue defined disability. Indeed, counsel's letter makes clear that Plaintiff sought Residual Disability Benefits, rather than Total Disability – i.e., he did not claim a new or recurrent disability within the meaning of the policies. Reliance on counsel's letter was error. While this alone would not require remand, I address the issue to provide additional guidance following remand on the grounds discussed in part II B supra.

## CONCLUSION

In conclusion, I cannot adequately assess whether the ALJ's decision was supported by substantial evidence, and this matter must be remanded for further proceedings. An appropriate Order follows.

**ORDER**

AND NOW, this 3rd day of April, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court